IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

        Plaintiff,     :     Case No. 2:18-cr-227
                                Also 2:21-cv-1096

                                District Judge Edmund A. Sargus, Jr.
  - vs -                      Magistrate Judge Michael R. Merz

JASON LOUIS,

        Defendant.     :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant's Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 81). On Magistrate Judge Jolson's Order, the United States has filed an Answer (ECF No. 86) and Defendant has filed a Reply (ECF No. 91). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 90).

**Litigation History**

The grand jury for this judicial district indicted Louis on eight counts related to distribution of heroin, fentanyl, and methamphetamine and related firearms violations (Indictment, ECF No. 20). Louis had previously been arrested on a Complaint (ECF No. 1) and had been in custody

1

since July 5, 2018. The time for filing an indictment or information was extended by agreement to allow production and evaluation of discovery "necessary to meaningfully discuss a possible resolution to this case prior to the time the Indictment or Information must be filed" (Joint Motion, ECF No. 9, PageID 12). This occurred while Louis was represented by appointed CJA counsel. Similar motions with the same rationale were filed August 22, 2018 (ECF No. 12) and September 10, 2018 (ECF No. 14).

The Indictment was returned October 30, 2018 (ECF No. 20). On November 14, 2018, Louis entered a not guilty plea before Judge Sargus who then entered a scheduling order (ECF Nos. 26 and 27). On December 31, 2018, the parties jointly moved to continue the trial date, representing to the Court that "The parties are in plea negotiations, and are moving toward a resolution. Both parties agree that additional time is needed for further negotiations in an effort to bring a resolution of this case to finality" (ECF No. 28, PageID 80).

On February 26, 2019, Louis, still through appointed counsel, filed an unopposed motion to continue "for the reason that counsel for the parties are actively engaged in plea negotiations, which require additional time to finalize." (ECF No. 31, PageID 95). Shortly thereafter, Attorney Daniel J. O'Brien entered his appearance as retained counsel for Louis (ECF No. 34). On April 22, 2019, Attorney O'Brien moved to continue the trial, representing "The parties are in plea negotiations, and are moving toward a resolution. Both parties agree that additional time is needed for further negotiations in an effort to bring a resolution of this case to finality." (ECF No. 37, PageID 114).

Finally on June 24, 2019, the parties entered into a Plea Agreement (ECF No. 40) which provides in pertinent part that Louis will plead guilty to all eight counts of the Indictment and not withdraw his plea, admitting he is guilty of those offenses (¶ 1). Louis represented he understood

that the Court had a duty to calculate a guideline sentence and consider the guideline range, along with possible departures and other sentencing factors under 18 U.S.C. § 3553(a)(¶ 6). The parties agreed to the attached Statement of Facts and to a sentencing range of 120 to 180 months (¶ 7). The United States Attorney agreed not to prosecute Louis further for conduct prior to the date of the agreement that was part of the same course of conduct described in the Indictment and known to the United States Attorney as of the date of the Agreement (¶ 9).

Two paragraphs of the Agreement deserve quotation in full. ¶ 10 provides:

> **Waiver of Appeal:** In exchange for the concessions made by the USAO in this Plea Agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum. Defendant also waives the right to attack his conviction or sentence collaterally, such as by way of a motion brought under 28 U.S.C. § 2255 and 18 U.S.C. § 3582. However, this waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct.

*Id.* at PageID 133. ¶ 16 provides: "**Entire Agreement**: This is the complete Agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties." *Id.* at PageID 134.

Louis pleaded guilty pursuant to the Plea Agreement on July 24, 2019 (Minute Entry, ECF No. 45) and the case was referred for a presentence investigation report. After receiving and reviewing that report, Judge Sargus sentenced Louis within the agreed sentencing range to 140 months on Counts 1, 3, 4, 6 and 7 and 120 months on Counts 2, 5 and 8 with the terms to run concurrently (Minute Entry ECF No. 53; Judgment Entry ECF No. 54).

Acting again through Attorney O'Brien, Louis appealed to the Sixth Circuit Court of Appeals (Notice of Appeal, ECF No. 56). After O'Brien was replaced by appointed counsel, that attorney filed a brief under *Anders v. California*, 386 U.S. 738 (1967), concluding there were no

nonfrivolous issues for appeal. The Sixth Circuit confirmed that conclusion and affirmed the conviction and sentence. *United States v. Louis*, 2020 U.S. App. LEXIS 25455 (6th Cir. Aug. 11, 2020)(unpublished; copy at ECF No. 66). Louis did not seek certiorari from the United States Supreme Court, but instead filed his § 2255 Motion here on March 11, 2021 (ECF No. 81).

Louis pleads the following grounds for relief:

>**Ground One**: Ineffective Assistance of Counsel
>
>**Supporting Facts:** I plead [sic] guilty to all 8 counts of the indictment and received nothing in return for my agreement to enter into this contract with the United States. I received a sentence above the guidelines range, no counts were dropped, I did not receive the benefit of accepting responsibility. I received nothing in return for everything that I gave to the United States by way of this bargained contract. My lawyer allowed me to make a contract where I gave everything and got absolutely nothing in return.
>
>Additionally, I was not made aware of the fact that I should have received something in return for this contract with the U.S. My lawyer allowed the contract to be one that was and is unconscionable. (Nothing in return from a party who has the upper hand in the negotiating position and where that party gets everything). These types of contracts are typically not allowed in contract law.
>
>The sentencing transcript discusses nothing that could be construed as a benefit to me from the plea agreement. (See DE 63, generally). Affid. ¶¶ 4, 5, 11. (The Affidavit referred to is that of myself, filed herewith). It was never explained to me what actual benefit I was to receive in pleading to every single count in the indictment. Affid. ¶ 6. In reading many cases for this motion, I have discovered that most of the time, if not in every single case, a defendant received something in exchange for the plea agreement. That did not appear to be the case here.
>
>**Ground Two:** Non-complaince [sic] with requirement that sentence calculations (even with Rule 11 pleas) begin with correct g. [uide] lines.

**Supporting Facts:** I entered into a Rule 11(c)(1)(C) which took into consideration the guideline range for my offenses and criminal history. This fact (on the factor of guideline ranges) is evident in all aspects of this case. Yet, the beginning analysis by the lawyers and the trial court did not start wiht [sic] a correct rendering of the guideline range (including my acceptance of responsibility). Even with a Rule 11(c)(1)(C), a correct picture of the guideline range should have been considered. And then, if the district court wants to go over the top of the range by, say, 20% or 30% then that court will do so correctly and not based on an incorrect range. This was not made known to me by counsel or the court.

**Ground Three:** Ineffective Assistance of Counsel (not abiding by my wish to forego the Rule 11 agreement).

**Supporting Facts:** At the beginning of my sentencing, I told the lawyer that I wished to back out of the Rule 11 agreement and have a sentence handed down by the guidelines alone. Basically an open plea. He said "no that it would 11 piss the judqe off" and to not do it.

I relented but did not want to do so. I relented based on the assertions that the court would sentence at or below 120 months. This did not happen. When I signed the plea agreement, both lawyers stated that if the Court's guideline range was lower than that in the agreement, the range would be lowered in that agreement. Affid. n 5. I asked my lawyer at the beginning of sentencing to "pull back the Rule 11 Agreement" and he declined stating that I shouldn't "piss the judge off." Making a judge mad should not factor into any equation during a sentencing.

**Ground Four:** Ineffective Assistance of Counsel (Not objecting to Non-relevant witness testifying at sentencing).

**Supporting Facts:** At my sentencing, the father of a young man who overdosed on drugs testified that it was my fault that this happened. This was not proven, charged, or part of anything in my case. I did not assist in this person taking an amount that would kill him. It is unfortunate that this happened but still, there was no proof

5

that I was involved in this. His testimony was referred to several times by the Court and there is no doubt that the Court allowed the testimony for some reason otherwise it would not have been proffered. A widespread rule of sentencing hearings is that non-relevant evidence or evidence without a solid basis is not allowed.

**Ground Five**: Prosecutor Misconduct related to one-sided "Agreement."

**Supporting Facts:** The U. S. Attorney negotiated from a position of much greater strength and offered up a "contract" that was totally one-sided. There was absolutely nothing given for what it received in the "bargain." The AUSA knew this was a ridiculous agreement and let it go through anyway. Additionally, it was agreed that the agreement would be changed if the guideline range were lowered as a result of the PSR. That too did not happen.

(Motion, ECF No. 81, PageID 660-65).

# Analysis

**Ground One: Ineffective Assistance of Counsel re Terms of Plea Agreement**

In his First Ground for Relief, Louis complains that his lawyer allowed him to enter into a Plea Agreement in which he got nothing for pleading guilty to all counts.

In its Response in Opposition to the Motion to Vacate, the United States relates that there was a Columbus-area death from an overdose of fentanyl in late 2017 (Response, ECF No. 86, PageID 698). In the investigation of that death, the United States learned the identity of Defendant as a drug dealer and monitored controlled drug and firearms sales transactions by him in the first half of 2018 until he was arrested on a warrant from this Court on July 5, 2018. *Id.* Execution of search warrants at properties associated with Louis yielded additional illicit drugs and firearms.

In all Louis was responsible for nearly 50 grams of heroin, 83 grams of methamphetamine, and 54 grams of substances that contained a detectable amount of fentanyl that the Government seized.

Investigations into the connection between Louis and the fentanyl death continued and Louis was made aware of that through counsel. *Id.* Additionally the Government was considering filing an information under 21 U.S.C. § 851 regarding Louis's prior drug convictions which would have doubled the mandatory minimum sentence for the indicted offenses from five to ten years. *Id.* at PageID 699. Additional charges under 18 U.S.C. § 924(c) were also being considered which would have added another mandatory minimum five years. *Id.*

As the record reflects (ECF Nos. 9, 12, 14, 28, 31, and 37), plea negotiations began shortly after Louis's arrest in July 2018 and continued for a year until the Plea Agreement was signed in June 2019.

In early June, 2019, the United States Court of Appeals for the Sixth Circuit decided *United States v. Havis,* 927 F.3d 382 (en banc), which held that prior convictions for attempted sales or deliveries of drugs under Tennessee law could not be counted in determining career offender status under 18 U.S.C. § 922(g)(1). The implications for Louis's case would not have been obvious, since his prior convictions were not under Tennessee law. During the time of the negotiations, the governing law was to the contrary, including the panel opinion in *Havis*. *United States v. Havis,* 907 F.3d 439, 442 (6th Cir. 2018) (citing *United States v. Evans,* 699 F.3d 858, 866-67 (6th Cir. 2012)).

The Plea Agreement was signed on June 14, 2019, only five days after *Havis* was decided. There is no indication on the face of the Agreement that the parties knew of the decision. However, the Probation Department did and reflected its impact in the Presentence Investigation Report ("PSR"), concluding that because of *Havis,* Louis's prior drug trafficking offenses were no longer considered to be controlled substances offenses under the Sentencing Guidelines and Louis therefore did not qualify as a career offender (PSR, ECF No. 86-6, ¶ 60, PageID 801). The PSR

7

recognized Louis's acceptance of responsibility and reduced his offense score by 3. *Id.* at ¶¶ 61-62. This resulted in a final offense score of 27. *Id.* at ¶ 63. The PSR calculated the guideline sentencing range at 100 to 125 months (¶ 166), but noted that:

> There is a Plea Agreement in the case, pursuant to Rule 11 (c)(l)(C) of the Federal Rules of Criminal Procedure. If the Court adopts the terms of the Plea Agreement, the defendant will be sentenced to a term of imprisonment of at least 120 months but not more than 188 months.

(¶ 169).

The United States defends Ground One on the merits, asserting Louis cannot demonstrate ineffective assistance of trial counsel under governing law.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that

9

> counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

A defendant is entitled to effective assistance of counsel in plea negotiations as well as at trial. *Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The core of Louis's first ineffective assistance of trial counsel claim is "Louis contends that he received nothing in return for his pleading guilty to every count in the indictment. In researching this issue, Louis reviewed 18 plea agreements and his was the only one that included a guilty plea to 100% of the charged offenses." (Reply, ECF No. 91, PageID 850). Louis acknowledges the Government's claim that giving up the possibility of filing an information under 21 U.S.C. § 851was a concession that occurred, but he claims "That does not establish the required consideration for Louis's half of the contractual exchange." He notes the Government mentioned during plea negotiations the ongoing death investigation related to the sale of fentanyl, but claims nothing about that is in the Plea Agreement. *Id.* at PageID 851. He discounts the Government's agreement not to pursue 18 U.S.C. § 924(c) charges because it did not protect him from prosecution by state or other federal officials. *Id.* at PageID 852. And he discounts the threat of career offender status by claiming it was a phantom because he is not a career offender. *Id.*

As Louis argues, plea agreements are contractual in nature and are therefore interpreted and enforced in accordance with traditional contract law principles. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Principles of contract law are generally applicable to the

interpretation and enforcement of plea agreements. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000); *State v. Bethel*, 110 Ohio St. 3d 416 (2006).

Consideration is a predicate to the formation of a contract and is defined as "the bargained-for legal benefit or detriment." *Lake Land Emp. Group of Alron, LLC v. Columber*, 101 Ohio St. 3d 242 (2004). Louis's position seems to be that only dismissal of one or more counts of an indictment is sufficient consideration for a defendant's entering into an agreement to plead guilty. He cites no precedent for this proposition, but merely his own observation that in the eighteen plea agreements he reviewed, there was always at least one other count dismissed.

In contract law, the promise of one party to do something in the future is sufficient consideration for the other party's reciprocal promise. If a prosecutor's promise in a plea agreement is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).

Here the prosecutor's promises were not illusory. The United States Attorney promised not to pursue other charges arising from Louis's course of conduct and in particular not to file an information under § 851, not to pursue a death enhancement for the fentanyl death, and not to add a firearm specification. Louis essentially says those promises were insignificant, but he does not deny that they were kept. Louis apparently believes the United States could not have prevailed on any of them, but he cannot prove that this is so.

More significantly, Louis did not have to defend against these enhancements at trial and run the risk that a jury would convict him on them. He got what every person who enters into a plea agreement gets: certainty that he will not have to defend additional charges. A major reason

11

why most civil and criminal cases in federal court are settled by agreement is that, however sure of one's a position a litigant may be, it is difficult to predict jury behavior with any certainty.

The Magistrate Judge concludes that Louis received very valuable consideration for his part of the Plea Agreement. It was therefore not deficient performance for his attorney to recommend entering into the Agreement. Ground One should be dismissed with prejudice.

**Ground Two: Incorrect Calculation of the Guideline Sentencing Range**

In his Second Ground for Relief claims that his Guideline Sentencing Range was incorrectly calculated.

Consideration of Ground Two on the merits is barred by the Plea Agreement which precludes Louis from filing a § 2255 motion raising any claims other than ineffective assistance of counsel and prosecutorial misconduct.

As part of the Second Ground, Louis asserts the guideline calculation is wrong because he was not given credit for acceptance of responsibility. That claim is belied on the face of the PSR at ¶¶ 61 and 62 where Louis is given the three points allowable for acceptance of responsibility. If it were to reach the merits of this claim, the Court would find no error in the guideline calculation.

Finally, even without the waiver, claims of incorrect guideline calculation are cognizable only on direct appeal and not on a motion to vacate. Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if

ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

Ground Two should therefore be dismissed with prejudice.

**Ground Three: Ineffective Assistance of Trial Counsel by Failing to Back Out of the Rule 11 Agreement**

In his Third Ground for Relief Louis claims that on the morning of sentencing, he told his attorney he wanted to back out of the Fed. R. Crim. P. 11(c)(1)(C) agreement and proceed with an "open plea". However, his attorney talked him out of it by saying it would anger the judge.

In the Motion Louis argues "Making a judge mad should not factor into any equation during a sentencing." (ECF No. 81, PageID 663). If something about a case makes a judge unable to decide it fairly, the judge has an obligation to recuse himself and transfer the case to another judge. On the other hand

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.
> #

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994). Louis has suggested nothing that should have caused Judge Sargus to recuse himself. On the other hand, attempting to withdraw from a Rule 11(c)(1)(C) agreement on the morning of sentencing would annoy most judges, especially in a case such as this where the Court had granted numerous continuances of both indictment and trial to permit plea negotiations.

But assume for a moment that such an attempted withdrawal would not bother most judges, but that Attorney O'Brien knew it was a particular source of annoyance to this particular judge. In that hypothetical case, it would have been ineffective assistance of trial counsel **not** to tell the client about the risk. One of the benefits of retaining experienced attorneys is that they know the idiosyncrasies of particular judges and can use that knowledge to their client's benefit. Louis has not shown Attorney O'Brien performed deficiently by persuading him not to attempt[1] to withdraw his Rule 11(c)(1)(C) agreement.

Ground Three should be dismissed with prejudice.

**Ground Four: Ineffective Assistance of Trial Counsel for Not Objecting to Non-Relevant Witness Testifying at Sentencing**

As noted at the outset of this Report, the investigation into Louis's conduct as a drug trafficker was precipitated by a fatal drug overdose in which fentanyl was implicated. Police learned of the victim's connection with Louis through examining the victim's cellphone records. They then confirmed Louis's status as a dealer through a number of controlled drug transactions in the first half of 2018.

Louis complains that at his "sentencing, the father of a young man who overdosed on drugs testified that it was my fault that this happened." (Motion, ECF No. 81, PageID 664). Claiming no involvement or responsibility, Louis writes "I did not assist in this person taking an amount that would kill him. It is unfortunate that this happened but still, there was no proof that I was involved in this." *Id.*

---

[1] Apart from whether or not it would have angered the judge is the question whether Louis would have been allowed to withdraw at that point.

There are a number of flaws in this argument. First of all, Mr. Mottinger did not testify. That is, he was not placed under oath and limited to stating matters of his personal knowledge as required by Fed. R. Evid. 602. Judge Sargus did not consider the statement as testimony and expressly told counsel that there was no death enhancement being considered.

Second, if the Government had chosen to pursue the death enhancement, it would not have had to prove Louis was personally present and recommended a lethal dose. Instead, it would have been sufficient to prove that Louis sold the drugs that were used and that sale was the "but for" cause of death. *Burrage v. United States*, 571 U.S. 204 (2014).

The reason there was no proof of Louis's involvement in causing this death is that he had bargained to keep the Government from presenting that proof. As the record shows, plea negotiations began when Louis was arrested and continued for a number of months before the indictment. Defense counsel would have known from discovery about the presence of Louis's number on the victim 's telephone and the Assistant United States Attorney continued to advise counsel that the death investigation was ongoing. Louis complains he got no benefit from the Plea Agreement, but he was never indicted for causing this particular death and he has offered no evidence that he could have defeated a death enhancement has it been indicted.

The procedure of allowing victim's statements at sentencing has grown considerably in recent years. The Constitution even allows a jury in a capital case to hear testimony about the emotional impact of the crime on the victim's family before they have rendered a final verdict. *Payne v. Tennessee,* 501 U.S. 808 (1991). This particular victim impact statement was not made before verdict and did not impact the agreed range of sentence under Fed. R. Crim. P. 11(c)(1)(C).

Louis has offered absolutely no legal authority on which his counsel could have relied to prevent this statement. It cannot be ineffective assistance of trial counsel to fail to make a motion which had no chance of success. Ground Four should be dismissed with prejudice.

**Ground Five: Prosecutorial Misconduct**

In his Fifth Ground for Relief, Louis complains of prosecutorial misconduct in offering the terms reflected in the Plea Agreement because the United States "negotiated from a position of much greater strength" and offered a one-sided agreement (Motion, ECF No. 81, PageID 665).

This argument is the inverse of that made under Ground One in which Louis claimed he got nothing in return for his guilty plea. The Report details above what it is that Louis was promised by the Government and notes that he got everything he bargained for.

The Magistrate Judge is not in a position to evaluate the strength of Government's case because that case was never presented to the Court. Thus it is not possible to tell whether to the bargain was "fair" in some abstract sense. 28 U.S.C. § 2255 does not authorize a court to evaluate the substantive fairness of a plea bargain. Rather, we are empowered only to decide if the resulting conviction is constitutional.

In a way of course, Congress has stacked the deck heavily against armed drug dealers by providing very harsh sentences. When the United State Attorney has enough evidence that a person has been an armed drug dealer to persuade a grand jury to find probable cause, the United States criminal code puts the United States Attorney in a very strong position because that is what Congress wanted. If the drug laws are too harsh, the remedy is to persuade Congress to lighten or abolish the penalties (or to stop engaging in armed drug trafficking). But so long as the United

States Attorney proceeds fairly in enforcing those laws, the fairness of the final result is not an issue in deciding a § 2255 motion. Louis got what he bargained for: a sentence within the agreed sentencing range. The Sixth Circuit found "No viable challenge to the validity of Louis's plea or the appeal waiver exists." (Slip opinion, ECF No. 66, PageID 268).

Louis also complains "Additionally, it was agreed that the agreement would be changed if the guideline range were lowered as a result of the PSR. That too did not happen." (Motion, ECF No. 81, PageID 665). No language to this effect appears in the Plea Agreement which concludes with a standard integration clause: "**Entire Agreement**: This is the complete Agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties." (Plea Agreement, ECF No. 40, ¶ 16, PageID 134).

Integration clauses are common in all sorts of contracts which terminate litigation, both civil settlement agreements and plea agreements in criminal cases. They are included precisely to prevent what Louis is attempting in this second part of Ground Five: a claim that the deal is different from what the parties have agreed in writing is the whole deal. On the purpose and applicability of integration clause in plea agreements, see *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)(Stewart, J.)

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

"When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement for consideration, such a promise must be

fulfilled." *Santobello v. New York*, 404 U.S. 257 (1971). However, an off-the-record promise, even one admitted later in habeas, is not enforceable if its existence is contradicted by an integration clause in the plea agreement and affirmative representations to the trial court that there are no other promises. *Smith v. Anderson*, 632 F.3d 277 (6th Cir. 2011). Of course the United States Attorney does not admit any such promise.

Ground Five is therefore without merit and should be dismissed with prejudice.

**Conclusion**

Based of the foregoing analysis, the Magistrate Judge respectfully recommends the § 2255 Motion be DENIED. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 6, 2021.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.